Opinion by JUDGE MILLER
*468 ¶ 1 Defendant, Guy V. Lucero, Jr., appeals the trial court's order denying his Crim. P. 35(b) postconviction motion seeking reduction of his aggregate eighty-four-year sentence for nonhomicide crimes he committed as a juvenile. He asserts that this sentence violates the Cruel and Unusual Punishments Clause of the federal constitution's Eighth Amendment and article II, section 20 of the Colorado Constitution, citing Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). The Supreme Court held in Graham that juveniles may not be sentenced to life without parole (LWOP) for nonhomicide crimes. Id . at 74-75, 130 S.Ct. at 2030. Defendant contends that his sentence constitutes a de facto LWOP sentence. We conclude that because his sentence provides a meaningful opportunity for release, it does not amount to LWOP, and we therefore affirm the order.
I. Background
¶ 2 In 2008 defendant was convicted of conspiracy to commit first degree murder, attempted first degree murder, and two counts of second degree assault, the sentences for all of which were aggravated as crimes of violence. Although defendant was fifteen at the time of the incident giving rise to his convictions, he was charged and tried as an adult. See Ch. 122, sec. 6, § 19-2-517(1) (a)(II)(A), 2006 Colo. Sess. Laws 422-23. He received consecutive sentences totaling eighty-four years in the custody of the Department of Corrections. His conviction and sentences were affirmed on direct appeal. People v. Lucero, 2009 WL 1915113 (Colo.App. No. 07CA0774, July 2, 2009) (not published pursuant to C.A.R. 35(f) ). Defendant was fifteen years old at the time of the offenses and seventeen years old at the time of sentencing. The parties agree that he will be eligible for parole for the first time when he is fifty-seven years old.
¶ 3 In 2011 defendant filed a timely Crim. P. 35(b) motion seeking reduction of his sentence. The motion reviewed numerous mitigating factors and, as pertinent here, argued that defendant's sentence is unconstitutional under Graham because "the reality of an eighty-four-year sentence carries nearly identical implications" as life without parole.
¶ 4 The trial court held a hearing on the motion, at which defendant addressed the court. In a written order, the court denied the motion. The order does not contain a proportionality review or refer to Graham or its applicability, but it considers defendant's age:
Much has been made of the fact that this Defendant was 15 at the time of this offense, and that he was tried as an adult. While the Court is not unsympathetic to this fact, this fact alone does not require a reconsideration of this sentence. In fact, this Court previously took that fact into significant consideration when it sentenced this Defendant to a period of incarceration that was at the lower end of the range of penalties available for these crimes.[1]
....
Given the circumstances of this crime, the Court believed at the time of sentencing that a significant punitive sanction was appropriate, in order to address issues of the nature of the offense, development of respect for the law, deterrence of crime and the protection of the public. While this Defendant was very young at the time, the nature of these crimes cannot be understated.
II. Analysis
A. Reviewability
¶ 5 As a threshold matter, the People contend that defendant's claim is unreviewable under Crim. P. 35(b). Whether or not defendant's claim may be reviewed under Crim. P. 35(b), review is available under Crim. P. 3 5(c)(2)(I) as a claim "[t]hat the ... sentence *469 [was] imposed in violation of the Constitution ... of the United States." See People v. Collier, 151 P.3d 668, 670 (Colo.App.2006) ; People v. Wenzinger, 155 P.3d 415, 418 (Colo.App.2006). We therefore need not determine the reviewability of defendant's claim under Crim. P. 35(b).
B. Sentence
1. Standard of Review
¶ 6 We review constitutional challenges to sentencing determinations de novo. Lopez v. People, 113 P.3d 713, 720 (Colo.2005) ; People v. Banks, 2012 COA 157, ¶ 115, 412 P.3d 417.
2. Applicability of Graham
¶ 7 In Graham, the Supreme Court held that the Cruel and Unusual Punishments Clause of the Eighth Amendment categorically prohibits LWOP for juveniles convicted of nonhomicide crimes. 560 U.S. at 74-75, 130 S.Ct. at 2030. Looking to the class of the offender, the Court reasoned in part that juveniles "are less deserving of the most severe punishments" because, as compared to adults, they exhibit a " 'lack of maturity and an underdeveloped sense of responsibility.' " Id . at 68, 130 S.Ct. at 2026 (quoting Roper v. Simmons, 543 U.S. 551, 569, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) ). The Court also recognized that LWOP is "disproportionately harsher for juveniles than for adults, reasoning that 'a juvenile offender will on average serve more years and a greater percentage of his life in prison than an adult offender.' " Bunch v. Smith, 685 F.3d 546, 550 (6th Cir.2012) (quoting Graham, 560 U.S. at 70, 130 S.Ct. at 2028 ). Ultimately, the Court held:
A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.
Graham , 560 U.S. at 75, 130 S.Ct. at 2030.
¶ 8 The Court expanded on this reasoning in Miller v. Alabama, 567 U.S. 460, 478-80, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012), holding that mandatory LWOP for juveniles convicted of homicide crimes also violates the Eighth Amendment. Juveniles " 'are more vulnerable ... to negative influences and outside pressures,' including from their family and peers; they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings." Miller, 567 U.S. at 471, 132 S. Ct. at 2464 (quoting Roper, 543 U.S. at 569, 125 S.Ct. 1183 ). "[A] child's character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrieveabl[e] deprav[ity].' " Id. (quoting Roper, 543 U.S. at 570, 125 S.Ct. 1183 ). The Court emphasized that Graham imposed a "flat ban" on LWOP for nonhomicide crimes, regardless of the severity of the offense. Id . at 473, 132 S.Ct. at 2465.
¶ 9 Defendant acknowledges that he was not literally sentenced to LWOP. However, he asserts that his aggregate eighty-four-year sentence is a de facto or effective LWOP sentence and thus runs afoul of Graham 's underlying principle that the Eighth Amendment requires that juveniles receive some "meaningful opportunity to obtain release." See Graham, 567 U.S. at 479, 130 S.Ct. at 2030.
¶ 10 Since the Supreme Court decided Graham in 2010, several state and lower federal courts have grappled with these issues and reached different results. Examples of cases holding de facto LWOP sentences of juveniles convicted of nonhomicide crimes to violate the Eighth Amendment include People v. Caballero, 55 Cal.4th 262, 145 Cal.Rptr.3d 286, 282 P.3d 291, 295 (2012) (110-year-to-life sentence and first eligibility for parole after minimum of 100 years); Floyd v. State, 87 So.3d 45, 45-47 (Fla.Dist.Ct.App.2012) (eighty-year sentence and first opportunity for release at age eighty-five); and Adams v. State, 188 So.3d 849, 851-52, 2012 WL 3193932, at *2 (Fla. Dist. Ct.App. No. 1D11-3225, Aug. 8, 2012) (sixty-year sentence and first opportunity for release around age seventy-six). Cases rejecting Graham challenges to sentences claimed to be LWOP include Bunch, 685 F.3d at 546 (declining to apply Graham to consecutive, *470 fixed-term sentences); State v. Kasic, 228 Ariz. 228, 265 P.3d 410 (App.2011) (same); Henry v. State, 82 So.3d 1084, 1086-89 (Fla.Dist.Ct.App.2012) (review granted 107 So.3d 405) (same); and Angel v. Commonwealth, 281 Va. 248, 704 S.E.2d 386 (2011) (state statute permitting prisoners at age sixty or older who have served at least ten years of their sentence to petition for conditional release provides the "meaningful opportunity for release" required by Graham ).
¶ 11 The People assert that we should reject defendant's Graham claim for numerous reasons, including the following:
? The doctrine of res judicata or claim preclusion bars the claim because the constitutionality of the sentence was affirmed on the direct appeal;
? Defendant waived the claim under section 18-1-409(1), C.R.S.2012, which limits a defendant to "the right to one appellate review of the propriety of the sentence";
? Graham applies only to nonhomicide crimes, and defendant was convicted of both conspiracy and attempt to commit first degree murder (the People asserted for the first time during oral argument that these were homicide crimes);
? Our supreme court's decision in Close v. People, 48 P.3d 528, 540 (Colo.2002), requires that an Eighth Amendment challenge under the Cruel and Unusual Punishments Clause must be applied to individual sentences on separate counts, not consecutive sentences;
? Graham by its terms applies only to actual LWOP sentences, not de facto LWOP sentences; and
? Defendant's sentence is not LWOP because it is a sentence for a term of years and defendant will be eligible for parole consideration when he is fifty-seven.[2]
Some of these issues are addressed by another division of this court in an opinion issued today. People v. Rainer, 2013 COA 51, 412 P.3d 520. That division concludes, based on the facts before it, that a juvenile's de facto LWOP sentence is unconstitutional under Graham .
¶ 12 We, however, need not address all of these issues because the last contention listed is dispositive: defendant's sentence does not fall within the LWOP category. The parties agree that defendant will be eligible for parole when he is fifty-seven years old. We therefore conclude that defendant has "a meaningful opportunity for release" during his natural lifetime. See Graham, 560 U.S. at 74-75, 130 S.Ct. at 2030.
¶ 13 We reach this conclusion for three reasons. First, defendant concedes that the life expectancy for persons born in 1989, the year of his birth, is seventy-five years. Thus, he becomes eligible for parole well within his natural lifetime. This opportunity for parole addresses one of the concerns underlying the Graham decision-that an LWOP sentence deprives the juvenile of any hope of restoration of liberty and means that " 'good behavior and character improvement are immaterial.' " Graham, 560 U.S. at 70, 130 S.Ct. at 2027 (quoting Naovarath v. State, 105 Nev. 525, 779 P.2d 944, 944 (1989) ).
¶ 14 Defendant argues on appeal that, statistically, "serving 20 years in prison takes 16 years off life expectancy," thereby decreasing his natural life expectancy "by about 32 years" before he becomes eligible for parole. According to his calculation, his life expectancy is only forty-two years, and therefore the point at which he obtains his first opportunity for parole exceeds that expectancy. Defendant relies for these contentions entirely on a corrections textbook published in 1996.
¶ 15 However, defendant did not present these statistics or make the related argument in the trial court. Thus, the People had no opportunity to cross-examine on this material or to present rebuttal evidence or arguments, and the trial court could not consider it and make appropriate factual findings. Accordingly, we will not consider this material. See People v. Rubanowitz, 688 P.2d 231, 241 n. 5 (Colo.1984) (demographic statistics and census information attached to *471 an appellate brief, but which "was not presented at trial or in support of defendant's motion for new trial... will not be considered on appeal"); Fendley v. People, 107 P.3d 1122, 1125 (Colo.App.2004) (a party "cannot overcome the lack of information in the record by statements in the briefs"); see also DePineda v. Price , 915 P.2d 1278, 1280 (Colo.1996) (issues not raised in a postconviction motion will not be considered); People v. Wolfe , 213 P.3d 1035, 1037 (Colo.App.2009) (same).
¶ 16 A second reason supporting our conclusion that defendant has not been denied a meaningful opportunity for release is the holding of another division of this court in Banks, ¶¶ 129-31. In Banks, the division held, based on the Supreme Court's decision in Miller, that Colorado's statutory scheme mandating LWOP sentences for first degree murder was unconstitutional as applied to juveniles. Banks, ¶¶ 121-23 (citing Miller, 567 U.S. at 478-80, 132 S.Ct. at 2469 ). The division also noted that under Miller, "a judge or jury could ... choose 'a lifetime prison term with the possibility of parole or a lengthy term of years.' " Id. at ¶ 121 (quoting Miller, 567 U.S. at 487-90, 132 S.Ct. at 2474-75 ). The division looked to another statute, section 17-22.5-104(2)(c), C.R.S.2012, which provides that no person serving a life sentence may be paroled until he or she has served at least forty years, and concluded that application of that statute to juveniles would be constitutional under Miller . The difference between the forty years held constitutional in Banks and the forty-two years in this case is insubstantial.
¶ 17 Finally, the sufficiency of defendant's opportunity for parole appears consistent with rulings by courts in other jurisdictions applying Graham . Compare Angel, 704 S.E.2d at 402 (affirming juvenile's life sentence where statutory scheme provided for conditional release at age sixty), and Thomas v. State, 78 So.3d 644, 646 (Fla.Dist.Ct.App.2011) (finding no de facto LWOP where defendant would be released from prison in his sixties), with Caballero, 145 Cal.Rptr.3d 286, 282 P.3d at 295 (striking down juvenile's life sentence where he would not become eligible for parole for 110 years), and Adams, 188 So.3d at 851-82, 2012 WL 3193932, at *2 (sixty-year sentence held unconstitutional where the juvenile's first opportunity for release would be at age seventy-six, exceeding his natural life expectancy).
¶ 18 We therefore conclude that defendant's sentence provides for a meaningful opportunity for release within his natural life span. Accordingly, he has failed to carry his burden of establishing that his sentence is unconstitutional under Graham .
¶ 19 The order is affirmed.
JUDGE CASEBOLT and JUDGE NAVARRO concur.

Defendant asserts in his brief that the trial court sentenced him to the midpoint of each count's sentencing range, resulting in an aggregate sentence some forty-four years shorter than the statutory maximum.

The retroactive effect of Graham to this case is another potential issue that could bar defendant's claim. The People stated at oral argument, however, that they do not take a position on the retroactive effect of Graham .