PADOVANO, J.,
concurring.
I join in the decision to affirm the sentences in this case, as I believe that course of action is required by our precedents. However, I have come to the view that resentencing a juvenile offender to a lengthy term of years is not the correct approach to the problem identified in the Graham decision. In my view, the only lawful remedy is to declare unconstitutional section 947.16(6), Florida Statutes, to the extent that it applies to a juvenile offender sentenced as an adult. This would have the effect of making these offenders eligible for parole under the existing parole system.
The Supreme Court held in Graham that a sentence of life without parole for a juvenile offender convicted of a crime other than homicide violates the Eighth Amendment. The Court recognized that there may be some situations in which a juvenile offender in this class may be required to serve a life sentence but made it clear that the possibility of release cannot be foreclosed at the time of the sentence. As the Court explained, the state must give the defendant a “meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.” Graham v. Florida, — U.S. —,—, 130 S.Ct. 2011, 2030, 176 L.Ed.2d 825 (2010).
The response to Graham in this court has been to determine whether a resen-tencing to a term of years without parole is the functional equivalent of a life sentence. In my view, this approach misses the mark entirely. If we conclude, as we did in Floyd v. State, 87 So.3d 45 (Fla. 1st DCA 2012), that 80 years is too much, we are saying in essence that the defendant will not have a meaningful portion of his life left by the time he is released. In contrast, if we conclude as we did in Thomas v. State, 78 So.3d 644 (Fla. 1st DCA 2011), that 50 years is not too much, we are saying that the defendant will still be able to live a reasonable portion of his life outside of prison by the time he is released. But the question is not whether the defendant will have a significant part of his life remaining at the end of the sentence; rather, it is whether the defendant will have a reasonable opportunity to show that he has been rehabilitated during the course of the sentence and is therefore deserving of release at some point before the sentence expires.
This objective is one that could never be achieved by judges, at least not under our system. Florida judges have no authority to impose indeterminate sentences, as judges do in some other states. Moreover, a Florida judge has only a limited power to modify a sentence once it has been imposed. See Fla. R.Crim. P. 3.800(c) (limiting the power to modify a sentence to a period of 60 days after the imposition of *376 the sentence or mandate by the appellate court). In Florida, the sentencing judge has no authority to classify an inmate, to decide where he or she will be housed, or to prescribe a treatment program or a particular course of rehabilitation. Florida judges do not monitor the progress of inmates once they are committed. They have no way of distinguishing inmates who are incorrigible from those who have been truly rehabilitated. If a juvenile offender could somehow demonstrate the kind of maturity and rehabilitation the Court was referring to in Graham, a Florida judge would be powerless, in any event, to afford that juvenile a “meaningful opportunity to obtain release.”
In my view, the only way the courts can carry out the mandate of the Graham decision is to ensure that a juvenile offender is eligible for parole or some equivalent of parole. On this point, I agree with Judge Wolfs dissent in Gridine v. State, 89 So.3d 909 (Fla. 1st DCA 2011). The defendant in that case was resentenced after Graham to a 70-year term. The court held that the sentence did not violate the holding in Graham, but Judge Wolf dissented, with the following observation:
... [t]he only logical way to address the concerns expressed by the United States Supreme Court in Graham is to provide parole opportunities for juveniles. The Legislature, not the judiciary, is empowered to create a provision for parole. Absent the option of parole, I am at a loss on how to apply the Graham decision to a lengthy term of years. Is a 60-year sentence lawful, but a 70-year sentence not? Regardless, it is clear to me that appellant will spend most of his life in prison. This result would appear to violate the spirit if not the letter of the Graham decision. I, therefore, must respectfully dissent. However, in doing so, I note that absent a legislative solution, I look for guidance from either the United States or Florida Supreme Courts.
I fully agree with Judge Wolfs assessment of the problem but I think there is a workable solution even in the absence of legislation. Although legislative action would have been preferable, it is not absolutely necessary. If parole is the only effective solution to the constitutional deficiency identified in Graham, and I believe that it is, the court can cure the deficiency by addressing the constitutional validity of the statute that places a limitation on the eligibility for parole.
That was precisely the approach taken by the Louisiana Supreme Court in State v. Shaffer, 77 So.3d 939 (La.2011). There, the court reversed a sentence of life without parole for a juvenile offender, on the ground that the sentence was invalid under Graham. However, the court did not order resentencing. Instead, the court simply held that the Louisiana statute precluding parole eligibility for anyone sentenced to life in prison could not be applied to juvenile offenders. The effect of the decision was to reinstate the life sentence but to modify it in such a way that the offender would be eligible for parole. The court did not order the release of the offender. In fact, the court emphasized that the decision it had made would not guarantee that he would ever be released. To the contrary, the decision merely ensured that the offender would be entitled to consideration by the Parole Commission. The availability of parole, the court concluded, would bring the sentence into compliance with the Graham decision.
Fewer inmates are eligible for parole consideration in Florida than in Louisiana, but the reasoning in the Louisiana Supreme Court’s decision in Shaffer is applicable here, as well, and it is no less compelling. Florida still has a Parole *377 Commission, and its members continue to meet regularly to set presumptive parole release dates for qualifying inmates. Thus, the system that is needed to bring our state into compliance with the Graham decision is already in place. The only impediment is that section 947.16(6), Florida Statutes provides that inmates sentenced after the effective date of chapter 82-171, Laws of Florida, shall not be eligible for parole.
The class of eligible inmates in Florida depends on the date of the conviction and sentence, whereas the class of eligible inmates in Louisiana is based on the kind of sentence the court has imposed. But this is not a material difference. If the constitutional deficiency can be cured in Louisiana by striking a statutory provision that precludes parole eligibility for a life sentence, it can also be cured in Florida by striking a statutory provision that precludes parole eligibility for inmates sentenced after a particular date.
The remedy in Shaffer of reinstating parole eligibility will not necessarily result in an earlier release date. For example, if the trial judge had resentenced the defendant in this case to life in prison with the proviso that he would be eligible for release on parole, the defendant could actually serve life in prison. To say that the defendant is eligible for parole is certainly not a guarantee that he will be paroled. The value of the approach taken in Shaffer is that it gives the defendant exactly the kind of opportunity the Eighth Amendment requires under the rule in Graham.
In contrast, the term of years sentences we have approved in this case do not afford the defendant that opportunity. He will be released at a fixed point in the future, and the timing of his release will have no connection with his behavior in prison or any efforts he might make to rehabilitate himself. He might be able to establish his rehabilitation next week, next month, or next year, but it will make no difference. We have assumed that the Graham problem was solved by the new 40-year consecutive sentences, but I think the fallacy in this assumption is that the problem is not one that could ever be solved by the sentence itself. It is a problem that requires individual evaluation by professionals working in our correctional system.
For these reasons, I believe that the Florida courts have no alternative but to declare section 947.16(6) unconstitutional to the extent that it applies to a juvenile offender sentenced as an adult. In my view, this is the only way to ensure compliance with the mandate of the Graham decision. It is true that Graham is limited to life sentences without parole, but the reasoning of the decision would apply with equal force to a sentence for a term of years without parole. And I believe that it is only a matter of time before we will be forced to conclude that it is impossible to say how long that term must be.
Judge Griffin succinctly expressed the futility of this exercise in Henry v. State, 82 So.3d 1084 (Fla. 5th DCA 2012). There, the court held that Graham was limited to a term of life without parole and that it did not therefore require the court to invalidate a lengthy sentence to a term of years without parole.[2] As Judge Griffin explained,
If we conclude that Graham does not apply to aggregate term-of-years sen *378 tences, our path is clear. If, on the other hand, under the notion that a term-of-years sentence can be a de facto life sentence that violates the limitations of the Eighth Amendment, Graham offers no direction whatsoever. [Footnote omitted] At what number of years would the Eighth Amendment become implicated in the sentencing of a juvenile: twenty, thirty, forty, fifty, some lesser or greater number? Would gain time be taken into account? Could the number vary from offender to offender based on race, gender, socioeconomic class or other criteria? Does the number of crimes matter? There is language in the Graham majority opinion that suggests that no matter the number of offenses or victims or type of crime, a juvenile may not receive a sentence that will cause him to spend his entire life incarcerated without a chance for rehabilitation, in which case it would make no logical difference whether the sentence is “life” or 107 years. Without any tools to work with, however, we can only apply Graham as it is written. If the Supreme Court has more in mind, it will have to say what that is.
Id. at 1089.
I agree that the courts will never be able to draw a line between a sentence to a term of years that offends the Eighth Amendment and one that does not. Even if we could arrive at a set limit for the length of the sentence itself, we would be forever drawing distinctions between the ages of juvenile offenders at the time of the offenses, the various sentence structures and the various provisions for gain time. In the end, none of this would achieve the goal of affording the juvenile an opportunity to show that he or she is worthy of release.
As Judge Griffin has pointed out, there is language in the majority opinion in Graham suggesting that a sentence for a very long term of years without the possibility of parole may be no better than a sentence to life without parole. While I agree with this analysis, I do not think that Florida judges must await further guidance from the United States Supreme Court to resolve the problems that are presently before us.
The principle announced in Graham is clear, and it is apparent to me that it would apply to a sentence for a term of years in the same way that it applies to a sentence of life. We can apply the spirit of the Graham decision, as Judge Wolf put it, by declaring invalid the law restricting parole eligibility as it applies to this class of offenders. The Eighth Amendment requires the possibility of release, and it seems to me that that possibility can be afforded only by a system of parole eligibility. It follows that a statute restricting parole eligibility violates the Eighth Amendment as applied to juvenile offenders.
Were I not bound by the precedents of this court, I would hold that section 947.16(6) is unconstitutional, to the extent that it removes parole eligibility for juvenile offenders who have been sentenced as adults.

. Our decisions in Floyd, Thomas, and the present case expressly and directly conflict with the decision by the Fifth District in Henry. The Fifth District held in Henry that a sentence for a term of years, no matter how long, does not violate the mandate of Graham. In contrast, our decisions hold that a sentence to a term of years without parole violates Graham if it is the functional equivalent of a life sentence.